Case number 22-7109, United Association of Journeymen and Apprentices of the Plumbing and Planketting Industry of the United States and Canada, a balance versus Gemma Power Systems, LLC. Mr. Femia for the balance, Mr. Silvestri for the appellee. May it please the court, my name is Nicholas Femia, I'm here on behalf of the Appellant United Association. The United Association appears before the court in challenge to a lower court opinion that declines to enforce an arbitration award and granted the motion to dismiss filed by Appellee Gemma. It's our position that the lower court committed a reversible error by applying the wrong arbitrability standard and also by concluding that Gemma had no obligation to arbitrate its dispute, excuse me, arbitrate its dispute with the United Association. I have reserved two minutes for rebuttal. So I just wanted to note that initially. If the court would permit me, I'd just like to take a minute to set the framework for the legal discussion. This case involves a jurisdictional dispute, which the D.C. Circuit has defined as a conflict between two or more groups of employees over which is entitled to do work for an employer. In this particular case, the dispute is over certain typing work being done at a Burnsy Power Project in Bysville, Ohio. Moreover, this case involves a jurisdictional dispute that has been adjudicated by the plan for the settlement of jurisdictional disputes in the construction industry. Which is a collectively bargained agreement between the Building and Construction Trades Council of the AFL-CIO, which is now referred to as North America's Building Trades Unions, and five multi-employer associations designed to provide multi-employer associations. The plan is designed to provide expedited resolution of jurisdictional disputes and ensure labor stability and peace on construction sites. For that reason, the plan specifically prohibits work stoppages, picketing, or other impediments to job progress and establishes a contractually agreed upon mechanism for peaceful resolution of disputes. And I think this court has in the past recognized that there's a long history of courts in the NLRB recognizing the plan as a favored method of resolving jurisdictional disputes. Now, the plan's effectiveness in ensuring labor peace is obviously dependent on all parties, employers, and unions complying with the plan's arbitration decisions. And accordingly, the plan specifies ways in which unions and employers can become bound or stipulate the plan. Stipulation stipulates the term of our plan uses, which is becoming bound to the plan. In the case of unions, if you're affiliated with the Building and Construction Trades Department, or if you sign a stipulation form committing yourself to being bound, or if you become bound via provision of a collective bargaining agreement, bingo, you're bound. In the case of an employer, it's a similar setup. You're bound if you are a member of an employer association, which has stipulated the plan, or if you signed your own stipulation form, or you're bound by virtue of a provision in a collective bargaining agreement. So in this case, it's the third for GEMMA. It's the third. Our contention is that GEMMA became bound via contractual provision. The UA is bound by virtue of its membership. What's interesting about this case is that there is no collective bargaining agreement between UA and GEMMA. Yet, UA is seeking to hold GEMMA to something that they apparently didn't agree to in the JCUs that they did sign. So can you, what is your best argument for why GEMMA should be bound by what the arbitrator decided in this case? Well, because it's not based on the JCU that GEMMA signed. Well, actually, the JCU, it kind of has two different unions, to be clear. Yes, there are two different, I should clarify that, yes, there are two JCUs. One with the Boilermakers and one with the Ironworkers. Both of those JCUs contain jurisdictional provisions, and there are three paragraph provisions that are identical provisions, and the operative provision is paragraph one. And paragraph one, obviously. Yes, I have it in front of me. That seems to apply to disputes between or among the union and other unions or any subcontractor. So that doesn't bind GEMMA. And then it says, decisions rendered under the plan shall be final and binding and conclusive on the union or other affected union. That doesn't bind GEMMA. Actually, Your Honor, if you read the provision, it says that, what it essentially says is that all jurisdictional disputes, not just disputes picked by GEMMA, but all jurisdictional disputes between the union, i.e. the signatory union, and any other unions who have signed agreements with GEMMA covering work on the project, or, and this is the operative phrase, any other unions who have signed agreements with any subcontractor governing work on the project. But that's still between the subcontractor, which is UA, and the union, another union. It's still not GEMMA, is it? I think the record reflects that the UA has worked on the Gorizzi project pursuant to agreements with subcontractors. No, I understand. So the UA is covered under that provision. So this is for disputes with unions, but not with GEMMA. Well, it's, first of all, the UA is covered by that provision because it has its work on the project with subcontractors. And this provision specifically covers jurisdictional disputes. If I could play out what I think happened, which seems to be in line with what paragraph one requires. UA, which is a subcontractor, I guess, had a dispute with the unions, I guess, the Boilermakers and the Ironworkers, about jurisdiction to perform plumbing work on the project. And so the arbitrator rendered a decision, said that UA should get the work. And that's binding on the union and other affected unions. So now the Boilermakers and the Ironworkers can't do the work. But GEMMA went and hired non-union workers to do the work. GEMMA seems to be in compliance with this JCU. Well, the UA is not a subcontractor. The UA is a union working for a subcontractor on the project. And so the. But that's how UA even gets in the door, right? That's how UA gets in the door. That clearly puts the UA in a position to file a complaint under the plan. Right. So why is my reading of what happened not correct? It seems that GEMMA is in compliance with paragraph one. There were jurisdictional disputes between UA and the Boilermakers and the Ironworkers. Right. There was an arbitration. That arbitration is final and binding on the unions. GEMMA said, OK, and they hired somebody else to do work. Well, why is that not completely in compliance? I guess you focus on. Actually, there are two provisions of the jurisdictional dispute provisions that the district court mentioned. One is final and binding on the unions. You know, our contention is that if you're incorporating. But unions that are part of the contract. I'm sorry. Unions that are part of the agreement. But if you're incorporating the term, the plan into your agreement, you're incorporating it by reference. That means you have to go beyond this physical contract and look at the terms of the plan and who that calls. But if anybody is covered, why is there an offering to be part of the collective bargaining agreement? I'm sorry. If anybody essentially is going to be covered, why is there necessary for there to even be an offering to the UA in this regard, which they refuse to be a part of? Yes, I would argue that the fact that there is no. Collective agreement between the UA and GEMMA isn't really relevant for these purposes. The fact of the matter is. The UA can file a plan complaint under this language. The plan itself is a contract between GEMMA and the UA. And with regard to the. Again, addressing your issue with regard to the question of it being binding only on unions. Again, I would argue that if you're. Stipulating to the planet collective bargaining agreement, you are, in fact, incorporating the plan. And there is there is. Case law, which I think backs up that claim. And but with respect to the people. That you're in a collective bargaining agreement with the only reason. We began by saying GEMMA is subject to the plan based on the collective bargaining agreement. That's how they're subject to the plan in this case. Right? And this it has complied with this collective bargaining. According to paragraph 1, so I don't see what the issue is. And my question for you is under your reading of. Of this provision in any random union that's subject to the plan come in. Demand work from GEMMA and if GEMMA says, no, they can go to arbitration and try to buy GEMMA to hire them. Because that seems to be what's going on here. It's not any random union. It's any union. Uh, that that is bound to the plan, but that's almost all unions. Isn't it building construction unions? Because it's the plan just by membership and. Building and construction industry. Yes. So that just seems very. Broad and and not consistent with the terms of arbitration. You only have to arbitrate based on what you've agreed. Arbitrate that's sort of a basic principle. So, why, why do you have to arbitrate with any random union that comes in and wants work? Well, I think in part because the. Paragraph 1 clearly allows the. To to file a complaint. Because it is working on Wednesday project is for a subcontractor, but it doesn't find Jim. It, it, it, the plan provides for final and binding resolution. Among unions, no, no, it's, it's, it's the plan is a contract between. The, the building trades department and. And employer, multi employer associations. Employers and the unions become bound to it individually. So what's your best argument for finding GEMMA based on the plan and the J. C. U. I think it's, it's a number of things. I think. The jurisdictional disputes provision. Clearly incorporates. The plan and incorporated by reference. The plan basically says that it's, uh, it issues decisions that are final and binding. Uh, and, uh, the. And and, uh, and, um. I believe that that answers your question. Isn't isn't your argument though that. Um, because Gemma. And what I'll call. The parent. I believe that the U. S. Ended into an agreement. That any subsidiary union. All U. A. Gets the benefit of that agreement. In other words. The subsidiary union here is not a random. Union, but rather. It gets the benefit of. It's parents agreement. With the employer at issue. Or have I misunderstood your argument? Yeah, yes, the plan is the plan is a yes. I just understood your argument or yes, I'm accurate. I think that's accurate. You a, is a subsidiary of which union that's in an agreement with. The, I'm sorry, the, the, the way is bound to the plan. It's local unions is it's still a local union. Worked on on the site for a subcontract. That's not the question. Okay. I, I, maybe I misunderstood Roger's question. I thought she said, if you a, is the subsidiary. Of a union that has entered a contract with Gemma. And you may benefit from that. But factually, I'm and you said, yes. The factually, I'm saying, which union is you a, a subsidiary of that has entered a contract. I think I understood the question. He was a subsidiary of the point makers the other way around. Yeah. So, so what is your answer now that you understand and you say my question is. Based on a false premise. I'm not sure I understand your question. Do you understand Japan's question? Can you restate the question? I guess my, my question was. What is your best argument for how you a. Gets to bring this action when it does not have a collective bargaining. Agreement with Gemma and is, I guess, not a subsidiary. Of the boiler makers or the iron makers that do. And I think you're saying it's a subcontractor doing work on the currency project. But I still don't see as a subcontractor how. You a gets to buy Gemma. Because it's not within the terms of the JC use that. Gemma did sign with the boiler makers and the. And it appears that is not a subsidiary of the boiler makers, the iron workers. Right? I still think you're a random union coming and trying to find Gemma. I think that you dispute that, but I'm trying to understand. What's your best argument for why that's not the case. Right. I think. All right. The point we're trying to make is that. There is a requirement of a collective bargaining agreement. Between that's it's sort of that's kind of a recurring argument. There's no need for a collective bargaining agreement between. The way and Gemma in this.  The collective bargaining agreement with the boiler makers. Yes, that's the only way that your client gets to. To enter arbitration with the other union, the collective bargaining. Right, Jim, excuse me, you may not have had a direct action against Gemma. This contractually through or some other method. The point is that the plan itself. Once you once parties stipulate to the plan itself, the plan itself becomes a contract between the parties. And under the terms of the plan, you, the way it was well, whether it's rights to seek. Plan arbitration and enforce plan arbitration. And you say once the parties though. To the contract, which is not a party. Yes, the is not a party to that particular agreement. But it's, it's, it is covered by is allowed to seek plan arbitration. Pursue that agreement. It's all the plan arbitration and it got an award. Under the terms of the of the plan. The parties, the decision is final and binding and it's, it's binding on all parties. And our argument is that that. So, the, the, the. The plans terms are incorporated by reference. And I don't think the outside agreement between UA and the subcontractor is part of the record. Right. It's not part of the record, but it is in the record that the UA works on. On jobs with subcontractors. I guess that's kind of. That's a matter of dispute. Right. But I guess it's kind of begging the question about whether or not there were some remedies in that contractual relationship. The, the. No, I, I, this is the. There all the parties were stipulated to the plan. The UA pursued the case under the plan. The terms of the plan make it final and binding and all parties. Uh, including. We've also got a statement in the record. That essentially states that. If you had signed the document. Then the other unions that are part of the plan would have relinquished their right. With respect to this jurisdiction dispute. And so at least. In that regard, these other unions also believe that you would have needed to be part of this. Agreement. The other unions. Well, I don't think the other unions. That position. I think what happened here is that the. The work was assigned to these unions because and because the. You was not seen for example, the general. And then. Uh, but. The, the, I'm sorry. I think. Was there anything else that you wanted to add? You know, you answered our questions, but was there anything else that you wanted to add? Oh, not at the moment. I'm going to reserve time for revolving. Okay. Thank you. It please the court morning. My name is Steve Sylvester. I'm representing Gemma. Who's the respondent of Kelly's case? Since 1960. And the steelworkers chose the United States Supreme Court. It's ruled it's been the law of the land. That the only way to arbitrate. A dispute between a union and a company is that there has to be an agreement. Arbitrate that dispute. That has been the case all the way through since 1960. This matter here is proceeds from a. Project a large construction project in southeastern Ohio. It's a power, it's a gas fired. Power turbine power plant. That was being constructed in a remote relatively remote place in southeastern Ohio. So, Jenna is a project constructor. And before starting construction, it attempted to negotiate. A pre hire agreements, which, which is legal in the in the construction industry. A, that agreements with the trade unions. Because it needed skill labor perform that work in particular. It's good work in this case doesn't involve normal plumbing. It involves high pressure welding. Of of gas and steam that's coming through that. So we need to scale later. Gemma was also concerned as it started this project. That it wouldn't have enough because it was a years long project. Wouldn't have enough skill labor. It completed the unions wouldn't be able to supply enough later. Whether it was volume or skill sets. So there are provisions in the, in the job compliance agreements. The J. C. U. These are the collective bargaining. The Gemma installed and negotiated with oil makers. And with the young workers that permits Gemma. Was signed work to other source later outside some contractors to. Non union labor in the event that that they didn't have skill labor, or there wasn't enough. So that that's how this case start. So, at the beginning, it negotiated a job compliance understanding, it's like the bargaining with the iron workers. It negotiated a collective bargaining agreement with the board. In an attempt to negotiate, like, the bargaining agreement with the plumbers. And it offered the plumbers the same agreement. Essentially, the same agreement that iron worker sign. And then boiler workers, sorry. But you already did sign when the project started, and they got to the phase where they were doing high pressure welding. Gemma signed that work and asked the iron workers and the primary to do that work. And they proceeded to do that work. And then this case started after that. So, then there was a demand to arbitrate before the plan. And Gemma took the position of the plan that it didn't have jurisdiction 1. Because it didn't sign it hadn't signed a collective bargaining agreement. But the way and judge Rogers, there is nothing in the record. There's no, there's no contract in the record. Between Gemma and the International Plumbers Union. Or any other record that binds Gemma to the plan. Okay, there's no contract whatsoever. So, the case proceeded in the plan. Gemma took the position that the plan didn't have jurisdiction. We didn't appear in the plan, didn't file any positions, didn't offer any evidence. There was 2 arbitrations. The 1st arbitrator basically said, look, there's no collective bargaining agreement. I don't have any authority to sign the work to the UA, because you don't have a collective bargaining agreement with Gemma. There was an appeal or review process. The 2nd arbitrator, a gentleman named Hirsch, decided 1, that he had jurisdiction over Gemma. And 2, he ordered Gemma to assign the work to the plum to the UA. The problem was, and the problem is, that there is no underlying collective bargaining agreement. Either a pre-hire agreement between Gemma and the UA, or a post-hire, like Section 9, regular collective bargaining agreement between Gemma and UA. So, the issue here in this case is, whether or not the plan had jurisdiction over Gemma, and whether or not it's ordered to assign work to Gemma, violates federal labor law, which I believe it does, because it essentially opposes collective bargaining relationship between the UA and Gemma that doesn't exist, and has never existed in this project. So, Judge Kohler-Patelli rendered a decision. And again, our position before the district court was, not only did it bind Gemma to the decision of the tribunal, and we didn't accede to the jurisdiction of the tribunal with respect to the UA, but also there's a variety of NRA violations in connection with the award by the plan. So, Judge, the district court cited four provisions in the JCUs that are relevant here. First is paragraph one of the JCUs, which is Record 033. It says that Gemma can sign work to subcontractors or other source labor at its discretion, as it need. That's number one. Number two, at 034 of the record, there's an integration clause, which is really important because my friend is arguing that somehow there's another agreement where the plan itself provides jurisdiction. So, there's an integration clause here that says that the only agreement between the union, the ironworkers and the boilermakers, is that JCU. There's no other agreement that comes in. Very important, I think, provision in the district court's decision. And then number three was that there's the work jurisdiction language, which is in the supplement in the back of the JCUs that talks about paragraph one, which is the unions can arbitrate their dispute between themselves in terms of jurisdiction with the plan, but Gemma is not bound by the plan. And the plan's provisions or the plan's decisions are binding on the unions, but not on Gemma. In fact, the third paragraph of the JCU specifically says that Gemma retains the right to assign the work to other source unions or to others as it sees fit. So, that's a contract. And that's what's in front of the court right now. So, our position is that the district court's decision was based on a clear and unambiguous language of the JCUs. The judge did not apply the wrong standard. There's a clear and convincing discussion in the district court's decision, but actually it was, if you look at it, what the judge was commenting on was the other arbitration provision in the JCUs, the violation of the agreement. You didn't pay the right rate or you didn't pay benefits. That's a general arbitration, grievance arbitration provision in the JCUs that isn't even relevant here because this is not a contract between the UA and Gemma. So, basically our position, it really is that there's nothing else in the record that the UA could rely upon to somehow bootstrap or jump into jurisdiction with the plan. And therefore, the plan had no jurisdiction here and the order of the plan should be vacated. So, we ask for affirmance of the district court's decision. If you guys have any questions, I'll be happy to answer. Thank you. I apologize for perhaps misunderstanding your questions earlier. Let me restate my argument. This is counsel for appellants. Yes. Yes, sir. General claims that the UA can't point to any language to support its claim. But I want to reiterate that Gemma's JCU requires all jurisdictional disputes, all jurisdictional disputes, even those involving other unions that have collective bargaining agreements with subcontractors to be submitted to the plan. This evinces Gemma's agreement to submit all jurisdictional disputes to the plan. Moreover, and this is the point I was trying to make earlier, Gemma's incorporation of the plan into the JCUs logically requires consideration of the plan's provisions. And this expands the arbitrability analysis beyond the JCUs. The Supreme Court has held that to interpret a collective bargaining agreement, it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage, and custom pertaining to such agreements. This consideration is especially appropriate where the collective bargaining agreement in question incorporates other agreements by reference. And that's a point that's been made by the DC Circuit and BP Amica Corporation. BP held that collective bargaining may incorporate another document by reference without using that phrase. If a collective bargaining agreement evinces an intention to make that document part of the agreement. And in this particular case, Gemma has very clearly agreed to submit all jurisdictional disputes, including jurisdictional disputes involving unions that work for subcontractors on the Quincy project to the plan. And we make an excursion into the rules and regulations of the plan. We see that it says this decision of the arbitrator  I guess, though, the argument would be that Gemma's not a party to this dispute. Well, under the JCU, it's disputes between and among unions and other unions. It is a party to the dispute, and the contractors are always parties to jurisdictional disputes. The contractor is a party to a jurisdictional dispute under the specific terms of the plan. In fact, the contractor can initiate plan cases under the... With respect to unions that they've entered a collective bargaining agreement, but not with respect to others. I think the larger point here is that the collective bargaining agreement doesn't have to be between Gemma and the UA. The plan simply requires that the parties be bound. But I think the fundamental issue is Gemma entered collective bargaining agreements with these two other unions. And there is a provision within that collective bargaining agreement, this JCU, that does allow UA to dispute jurisdiction among unions, which it has done. But then this JCU says that the decisions rendered are final and binding on the union and other affected unions. So this JCU doesn't bind Gemma to abide by what the arbitrator said. And to the extent Gemma is part of the plan, it never intended, to the extent that we are looking at the rules of arbitration, it never intended to be bound to an arbitration with Gemma, who's nowhere mentioned in this JCU. With UA. I mean, with UA, right. My point is, Your Honor, that Gemma bound itself to the plan by virtue of this provision. And in doing so, it incorporated by reference the terms of the plan itself. And under the terms of the plan itself, Gemma is in fact bound to arbitrate with the UA. And it is bound to treat that arbitration as final and binding and to comply with it. The terms of the plan also authorize the UA to seek enforcement of the arbitration award, which is precisely what it did in this particular case. The other language, and I want to address this, the other language that the district court relied on was a language in paragraphs three of the jurisdictional disputes provision, which refers only to other source labor or non-union labor, which is not even applicable to this dispute, which involves union represented employees. And it says that Gemma retains the sole right to control and assign the jurisdictional duties of all work. Even if that provision is meant to relate to the entire jurisdictional dispute section, it doesn't infringe, the plan of work doesn't infringe on that right. Under the plan, a contractor has the sole right to assign work to employees represented by a particular union in the first instance, and is required to continue that original assignment unless otherwise directed by an arbitrator, or there's an agreement between the unions. As noted, the JCUs also mandate that employer assignments be followed until the dispute is resolved and planned. So the JCUs retain the sole right to control and assign the jurisdictional duties for all work provision is necessarily limited to the initial assignment of work and is subject to change mandated by a plan arbitration decision. So that's the way the plan works. And that's the way this provision works. You're supposed to, the jurisdictional disputes are covered by the plan. Paragraph one specifically says that assignments are to be kept in place until the plan rules, which, you know, is obviously an implicit acknowledgement that the plan governs. The plan has the ability to make a decision as to all jurisdictional disputes, including jurisdictional disputes between GEMMA and the EUA. If GEMMA, let me also point out that there is nothing in that jurisdictional dispute provision that expressly excludes GEMMA from, exempts GEMMA from plan arbitration or compliance with the plan. In fact, in its briefing, GEMMA actually says that the provision expressly, they use that word expressly, excludes GEMMA from plan arbitration, from compliance with plan arbitration. It does not. The language does not do that. And if GEMMA wanted to exclude itself, it could have easily knew how to do that, because in the third paragraph, you'll see it. They do make a point of excluding anything involving other source labor from the plan, but they don't do that with regard to disputes between unions and union-represented employees. So, you know, the standard under the Steelworkers Trilogy, and that is the applicable standard here. The standard used by the lower court, the particularly clear standard, was obviously inappropriate. She took that from Wright v. Maritime, a case that involved whether a statutory claim could be required to be processed under arbitration, a collective arguments arbitration. And that's not the case here. We're not talking about statutory claims in this case. So what you have here is the district court analyzing this jurisdictional dispute provision pursuant to an improper standard. The proper standard is provided by the Steelworkers Trilogy. And the Steelworkers Trilogy, which recognizes the public policy in favor of arbitration and the way it maintains industrial peace, makes it very clear that if you want to avoid the responsibility to arbitrate, you need forceful evidence, forceful evidence, positive assurance that you are excluded. And I would argue that there's nothing in this jurisdictional dispute provision that constitutes forceful evidence that GEMMA is not obligated to arbitrate this dispute. I would also point out that both arbitrators in this case concluded that GEMMA was, in fact, subject to the plan. Not just the arbitration that's at issue here, but even the first arbitration to which my friends refer. Both of them concluded that, in fact, this was arbitral and GEMMA was bound. I realize that the court doesn't have to defer to an arbitrator's opinion, but I think the case law suggests that the arbitrator's opinion should be taken into account. The first arbitrator did not find GEMMA bound. Excuse me? The first arbitrator did not find GEMMA bound. Yes, he did. What he found was that all the parties were subject and bound to the plan. But then he went through the... No, GEMMA wasn't bound and GEMMA appealed, and then you got the second arbitrator that was in favor.  concluded that all the parties were bound to the plan. But then in going through the decisional criteria of the plan, he said, well, there's no collective bargaining agreement here, so even though the decisional criteria of the plan would suggest that it's the UA's work, I'm not going to apply those criteria. So he didn't say that GEMMA was not bound to the plan. In fact, he found it was bound. Second arbitrator specifically found that GEMMA was bound and pointed out there's nothing in the plan that requires a contract and have a collective bargaining agreement with one of the contending unions. There's nothing in the plan that requires that. And GEMMA knew that when it incorporated the plan into its collective bargaining agreement. It knew that and it accepted that term, just as it accepted all the other terms, which I, as I mentioned earlier, are incorporated by reference into this agreement, including the terms of the procedural rules and regulations of the plan that say that these decisions are final and binding. The provisions of the plan that say that the parties to the dispute are required to comply with the decision of the plan. I don't think GEMMA can have it both ways. They obviously wanted the plan. They included the plan in these JCUs. They drafted these JCUs because they wanted the agreement. Why isn't it that GEMMA is bound to the plan with respect to the unions that had signed the JCUs? Why is it not that GEMMA is bound to the plan with respect to the ironworkers and the boilermakers? Because that's who they signed the JCU with. That's not how the plan works. Once you stipulate to the plan, the plan covers you comprehensively. But what if there's a conflict between what the plan says and the JCU? I think if you're incorporating the terms of the plan, if you're consciously adopting this mechanism, which offers tremendous advantages to GEMMA because it bars and picketing work stoppages and impediments to job progress. If you're incorporating that, then you buy the whole package. You buy the package that says that you're bound to any plan decision. You buy the package that says these decisions are final and binding on you. But you only get those benefits. They can't have it both ways. But you only get those benefits with respect to the unions that you have collective bargaining agreements with. They're obviously seeking those benefits with regard to other unions, too, because the jurisdictional dispute provision covers disputes with other unions on the project that have agreements with subcontractors. It's GEMMA that agreed and drafted this provision that brought the UA within the ambit. And it's obviously GEMMA thought it was in its interest to ensure that any jurisdictional dispute between the ironworkers and any other union on the project should be resolved peacefully pursuant to the terms of the plan. Thank you. I think I understand. Okay, thank you. Anything further, Judge Rogers? No, thank you. Thank you. The case is submitted.
judges: Childs, Pan, Rogers